FILED
United States Court of Appeals
Tenth Circuit

July 27, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

KENNETH L. SMITH,

          Plaintiff-Appellant,

v.

HON. MARCIA S. KRIEGER, in her
official capacity as Judge of the
United States District Court for the
District of Colorado; THE UNITED
STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO;
THE TENTH CIRCUIT COURT OF
APPEALS; THE COLORADO
COURT OF APPEALS; THE
SUPREME COURT OF COLORADO;
JOHN DOES 1-99,

          Defendants-Appellees.

_____

No. 09-1503
(D.C. No. 1:08-CV-00251-CMA-KMT)
(D. Colo.)

KENNETH L. SMITH,

          Plaintiff-Appellant,

v.

STEPHEN H. ANDERSON; ROBERT
R. BALDOCK; ROBERT E.
BLACKBURN; MARY BECK
BRISCOE; ROBERT H. HENRY;
PAUL J. KELLY, JR.; MARCIA S.
KRIEGER; MICHAEL W.
MCCONNELL; STEPHANIE K.
SEYMOUR; DEANELL REECE
TACHA; JOHN DOES 1-20; WILEY
Y. DANIEL; JUDGE DOE 21, in their
representative capacities; UNITED

No. 10-1012
(D.C. No. 1:09-CV-01018-PAB)
(D. Colo.)

STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO,

Defendants-Appellees.

## ORDER AND JUDGMENT[*]

Before **HOLMES** and **PORFILIO**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

These appeals are the latest in a series of cases and appeals filed pro se by Kenneth L. Smith, all of which can be traced to the Colorado Supreme Court's denial of his application for admission to the Colorado bar after he refused to submit to a mental status examination. *See Smith v. Mullarkey*, 67 F. App'x 535, 536 (10th Cir. 2003) (*Mullarkey I*) (explaining denial of Mr. Smith's application); *Smith v. Mullarkey*, 121 P.3d 890, 891 (Colo. 2005) (*Mullarkey II*) (same). In No. 09-1503, *Smith v. Krieger*, the district court granted the defendants' motions to dismiss and denied Mr. Smith's post-judgment motion to alter or amend the judgment. In No. 10-1012, *Smith v. Anderson*, the district court granted the

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

defendants' motions to dismiss, denied Mr. Smith's post-judgment motion, and imposed filing restrictions.

This court, on its own motion, has consolidated these appeals for submission and disposition. Because Mr. Smith proceeded pro se in the district court and on appeal, we give his filings a liberal construction, but we do not act as his advocate, and his pro se status does not relieve him of complying with procedural rules applicable to all litigants. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). In *Krieger*, we conclude that we have jurisdiction over only the denial of his post-judgment motion, which we affirm, deeming that appeal frivolous. In *Anderson*, we conclude that we have jurisdiction over the district court's dismissal of his action and its order imposing filing restrictions, both of which we affirm. Further, based on Mr. Smith's abusive pattern of litigation, we impose a monetary sanction of $3,000 and appellate filing restrictions.

## I.    09-1503, *Smith v. Krieger*

### A.  Background

In *Smith v. Krieger*, Mr. Smith filed a complaint in the United States District Court for the District of Colorado. He initially named the Honorable David M. Ebel as a defendant in his official capacity, apparently with an eye to policing Judge Ebel's handling of another case Mr. Smith had filed in that district, *Smith v. Bender*, No. 1:07-cv-01924-MSK-KMT (filed Sept. 12, 2007).

-3-

*See* Aplt. Opening Br. at 17 ("this lawsuit was filed with the purpose of attempting to prevent what happened in [*Bender*]"). Mr. Smith also named the district court and this court (the Federal Defendants), the Colorado Court of Appeals and the Colorado Supreme Court (the State Defendants), and 99 John Does as defendants. The case was drawn to Judge Ebel, who recused himself, and reassigned to the Honorable Marcia S. Krieger. After Judge Ebel recused himself in *Bender*, that case was assigned to Judge Krieger. Mr. Smith then filed an amended complaint in this case, substituting Judge Krieger in her official capacity for Judge Ebel.

Mr. Smith's amended complaint was based on allegations that "[d]efendants' practices of issuing 'designer law' (opinions applicable to one and only one set of defendants), issuing so-called 'unpublished' opinions (opinions declared to be devoid of precedential effect), and issuing opinions that fabricate and/or elide key facts" exceeded judicial power as defined in Article III of the Constitution and deprived him and similarly situated citizens of their right of access to the courts and to due process under the First, Fifth, and Fourteenth Amendments. R., Vol. 1 at 488-89, ¶¶ 104, 108. He also alleged that defendants violated his right to equal protection by treating "all pro se cases . . . shabbily and superficially." *Id.* at 488, ¶ 106 (internal quotation marks omitted). He requested a declaration that defendants violated these rights as alleged, and preliminary and permanent injunctions prohibiting them from issuing orders or decisions

(1) without addressing all legal arguments or factual contentions in a manner sufficient to facilitate adequate appellate (and, in this court, en banc) review; (2) without providing a rationale for any deviation from controlling precedent "sufficient to ensure that an appellate court and the general public will be aware of the variance"; and (3) "designated as being without precedential effect." *Id.* at 490-91.

After being named as a defendant in this case, Judge Krieger recused herself and filed a motion to dismiss. The Federal Defendants and the State Defendants also filed motions to dismiss. A magistrate judge issued a recommendation that defendants' motions be granted for a variety of reasons and that Mr. Smith's motion for injunctive and declaratory relief be denied. Mr. Smith filed objections. The district court modified the recommendation and adopted it, granting defendants' motions, denying Mr. Smith's motion, and dismissing the case in its entirety. With respect to Judge Krieger and the Federal Defendants, the district court determined that they were protected by sovereign immunity, a "concept [that] has long been firmly established by the Supreme Court, *see, e.g., Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411-12 (1821)," *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1280 (D. Colo. 2009). The court also concluded Mr. Smith had failed to show a waiver of the Federal Defendants' or Judge Krieger's sovereign immunity. The court further explained that to the extent Mr. Smith's complaint could be read as requesting relief against those

defendants under the mandamus provision of 28 U.S.C. § 1361, this court had

determined in *Trackwell v. United States Government*, 472 F.3d 1242, 1245-46

(10th Cir. 2007), that § 1361 does not confer district-court jurisdiction over the

federal courts or their judicial officers.

As to the State Defendants, the court concluded it lacked power to direct

them in the performance of their judicial duties, *see Van Sickle v. Holloway*,

791 F.2d 1431, 1436 n.5 (10th Cir. 1986), and that Mr. Smith's allegation that the

Colorado Supreme Court's adverse decision in *Mullarkey II* was rendered without

jurisdiction was no bar to the application of the *Rooker-Feldman* doctrine[1] to his

present claims because "'there is no procedural due process exception to the

*Rooker-Feldman* rule.'" *Krieger*, 643 F. Supp. 2d at 1283 (quoting *Snider v. City*

*of Excelsior Springs, Mo.*, 154 F.3d 809, 812 (8th Cir. 1998)).

The district court's order was filed on August 3, 2009, and its separate

judgment on August 4, 2009. On August 21, 2009, Mr. Smith filed a motion

titled "Rule 59(e) Motion to Alter or Amend Judgment" (the Post-Judgment

Motion), and he later moved for a hearing on the motion. The district court

denied both motions on September 9, 2009, concluding that in his Post-Judgment

---

[1]     "The *Rooker-Feldman* doctrine prevents the lower federal courts from
exercising jurisdiction over cases brought by state-court losers challenging
state-court judgments rendered before the district court proceedings commenced."
*Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quotation omitted). This court
previously relied on the *Rooker-Feldman* doctrine in rejecting Mr. Smith's
challenge to the Colorado Supreme Court's denial of his bar application. *See*
*Mullarkey I*, 67 F. App'x at 538.

Motion, Mr. Smith had simply reargued his case, which was not an appropriate basis for relief under Rule 59(e), and that a hearing was unnecessary.

Mr. Smith filed his notice of appeal (NOA) on November 6, 2009. In its substantive entirety, the NOA read:

> NOTICE IS HEREBY GIVEN that Kenneth L. Smith, Plaintiff in the above-captioned case, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the Final Judgment entered herein on August 4, 2009 (post-judgment motions disposed of on September 9, 2009).

R., Vol. 2 at 451.

## B. Discussion

### 1. Appellate Jurisdiction

Although none of the appellees have expressed concern about the effect that the timing of Mr. Smith's Post-Judgment Motion or the substance of his NOA has on our jurisdiction over this appeal, we have an obligation to analyze our jurisdiction sua sponte. *See Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1274 (10th Cir. 2001). Under Rule 4 of the Federal Rules of Appellate Procedure, "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). And under Rule 3(c)(1) of those Rules, a "notice of appeal must . . . specify the party or parties taking the appeal," "designate the judgment, order, or part thereof being appealed," and "name the court to which the appeal is taken." Fed. R. App. P. 3(c)(1). "Rule 3's dictates are jurisdictional in nature, and their

-7-

satisfaction is a prerequisite to appellate review. Although courts should construe Rule 3 liberally when determining whether it has been complied with, noncompliance is fatal to an appeal." *Smith v. Barry*, 502 U.S. 244, 248 (1992). Thus, to confer jurisdiction on this court, a document must be filed within the time specified by Rule 4 and provide the notice required by Rule 3.

Although it is clear from his NOA that Mr. Smith intended to appeal to this court, the NOA is not timely with respect to the district court's underlying judgment, and it is debatable whether he adequately designated the order denying his Post-Judgment Motion as an object of his appeal. We first address timeliness.

Because Mr. Smith did not file his Post-Judgment Motion within ten days of the district court's judgment, excluding intervening weekend days and holidays, *see* Fed. R. Civ. P. 6(a)(2) (2009),[2] we treat it as a motion brought under Rule 60(b) rather than one brought under Rule 59(e). *See Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). Thus construed, the motion did not toll the time for filing a notice of appeal because it was not filed within ten days of

---

[2]    Amendments to the Federal Rules of Civil and Appellate Procedure took effect December 1, 2009, and provide longer time periods under Fed. R. Civ. P. 59(e) and Fed. R. App. P. 4(a)(4)(vi) that would likely lead to the conclusion that we have jurisdiction over Mr. Smith's appeal from the district court's underlying judgment. However, in this appeal, we apply the version of those rules in effect at the time Mr. Smith filed his Post-Judgment Motion and his NOA because the filing deadlines those rules contain expired prior to the effective date of the revisions. *See Ysais v. Richardson*, 603 F.3d 1175, 1178 n.3 (10th Cir. 2010) (applying prior version of Rule 59 because ten-day period for filing Rule 59 motion had expired prior to effective date of the 2009 amendments), *petition for cert. filed* (U.S. June 10, 2010) (No. 09-11225).

the district court's judgment. *See* Fed. R. App. P. 4(a)(4)(A). In order to timely appeal the underlying judgment, therefore, Mr. Smith had to file his NOA "within 60 days after the judgment or order appealed from is entered," Fed. R. App. P. 4(a)(1)(B), the time limit applicable when the United States, its officers, or one of its agencies is a party. The district court's judgment was filed August 4, 2009, so Mr. Smith's NOA was due by October 3, 2009, but he did not file it until November 6, 2009. As such, the NOA was clearly untimely as to the district court's underlying judgment, and we lack jurisdiction to review that judgment. *See Bowles*, 551 U.S. at 214.

With respect to the district court's September 9 order denying the Post-Judgment Motion, Mr. Smith's NOA is timely but arguably noncompliant with the requirement that it "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). The NOA clearly designates the underlying judgment as an object of the appeal, but makes only parenthetical reference to the date on which the district court denied the Post-Judgment Motion. Furthermore, in his opening appellate brief, Mr. Smith has not specifically addressed the district court's denial of his Post-Judgment Motion, suggesting that he did not intend to appeal it. Given Mr. Smith's pro se status, however, and the liberal construction we are to give Rule 3, *Smith*, 502 U.S. at 248, we will construe the NOA as sufficiently designating the order denying his Post-Judgment Motion for purposes of Rule 3(c)(1)(B) because it refers to the fact that the order

-9-

was issued, and we will construe the arguments in his appellate brief as arguments that the district court should have granted post-judgment relief because it committed clear error in issuing its order of dismissal, which is a valid basis for such relief, *see Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

### 2. Merits

We review the district court's denial of Mr. Smith's Post-Judgment Motion for an abuse of discretion. *See Jennings v. Rivers*, 394 F.3d 850, 854 (10th Cir. 2005). Mr. Smith has advanced three main disagreements with the district court's underlying dismissal order: (1) that sovereign immunity lacks constitutional grounding; (2) that judicial immunity is no bar to relief in the nature of mandamus under 28 U.S.C. § 1361 against judges and courts; and (3) that the Colorado Supreme Court acted without jurisdiction in *Mullarkey II*, so its judgment is void, the *Rooker-Feldman* doctrine is inapplicable, and, apparently, the district court should have issued a declaration to that effect.

First, as the district court observed, the jurisdictional implications of the United States' sovereign immunity are firmly entrenched in Supreme Court jurisprudence. *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Cohens*, 19 U.S. at 411-12 ("The universally received opinion is, that no suit can be commenced or

prosecuted against the United States[.]"). And we are not at liberty to cast aside applicable Supreme Court precedent. *United States v. Harris*, 447 F.3d 1300, 1303 n.1 (10th Cir. 2006). The judiciary, which necessarily includes the Federal Defendants and Judge Krieger in her official capacity, forms one branch of the United States government, *see generally* U.S. Const. art. III, and therefore is protected by the sovereign immunity accorded the United States. Congress may waive the United States' sovereign immunity, but waiver must be express, *United States v. Mitchell*, 445 U.S. 535, 538 (1980), and the burden is on Mr. Smith to identify a specific waiver of sovereign immunity as it applies to his claims against the Federal Defendants or Judge Krieger, *see Normandy Apartments, Ltd. v. U.S. Dep't of Housing and Urban Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009). He has failed to do so, arguing instead that sovereign immunity itself lacks a constitutional basis, a notion wholly incompatible with the long-standing Supreme Court precedent noted above.

Regarding the district court's denial of relief in the nature of mandamus, a panel of this court has held that such relief does not lie against the federal courts under 28 U.S.C. § 1361, *Trackwell*, 492 F.3d at 1246, and another panel has held that federal courts lack mandamus power to order state courts or their judicial officers to perform their judicial duties, *Van Sickle*, 791 F.2d at 1436. There was no error in the district court's application of these holdings. Mr. Smith's argument that judicial immunity is no bar to relief under § 1361 is irrelevant, as

-11-

the district court specifically did not base its dismissal in any respect on judicial immunity.

Finally, Mr. Smith's argument that *Mullarkey II* was rendered in the absence of jurisdiction and is therefore void, nullifying the application of *Rooker-Feldman* doctrine, lacks an arguable basis. We have already informed Mr. Smith once that "the *Rooker-Feldman* doctrine bars [him] from relitigating the refusal of the Justices of the Colorado Supreme Court to recuse from his appeal in . . . *Mullarkey* [*II*]." *Smith v. Bender*, 350 F. App'x 190, 193 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 2097 (2010). His recourse was to seek review in the United States Supreme Court, which he did, albeit without success. *See Smith v. Mullarkey*, 547 U.S. 1071 (2006) (order denying certiorari). And his due process challenge to the Colorado Supreme Court's exercise of jurisdiction, on the ground that it ran afoul of Colorado's statutory scheme for appeals, falls squarely within the *Rooker-Feldman* doctrine. *See Doe v. Mann*, 415 F.3d 1038, 1042 n.6 (9th Cir. 2005) ("*Rooker-Feldman* applies where the plaintiff in federal court claims that the state court did not have jurisdiction to render a judgment.").

In sum, we conclude that this appeal is legally frivolous because "it lacks an arguable basis in either fact or law," *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). The district court properly followed controlling precedent.

## II.    10-1012, *Smith v. Anderson*

### A.  Background

In *Smith v. Anderson*, Mr. Smith named as defendants the United States District Court for the District of Colorado, three of that court's judges plus one "Judge Doe," and eight judges of this court plus twenty "Judge Does." He raised two claims. The first was "in the nature of a writ of *scire facias*,"[3] R., Vol. 1 at 5, ¶ 6, seeking to remove the defendant judges from their seats due to their alleged failure to maintain the "good Behaviour" required for continued tenure under Article III, section 1, clause 2 of the United States Constitution. In his second claim, he sought to prosecute crimes allegedly committed by the defendant judges against the United States. Mr. Smith claimed he had "inherent authority" to raise his first claim under "the Ninth and Tenth Amendments of the United States Constitution." *Id.* at 51, ¶ 255. With respect to his second claim, he contended he was "authorized to prosecute crimes committed against the United States by virtue of his inherent authority as co-sovereign, pursuant to powers reserved

---

[3]    *Scire facias*, meaning "'you are to make known, show cause,'" was "[a] writ requiring the person against whom it issued to appear and show cause why some matter of record should not be annulled or vacated, or why a dormant judgment against that person should not be revived." *Black's Law Dictionary* 1464 (9th ed. 2009). Although the writ is now abolished, "[r]elief previously available through [it] may be obtained by appropriate action or motion under these rules." Fed. R. Civ. P. 81(b).

under the Ninth and Tenth Amendments, and crimes committed against his person and/or property in particular." *Id.* at 51-52, ¶ 259.[4]

As the factual basis for his claims, Mr. Smith alleged that defendants Anderson, Briscoe, Blackburn, Baldock, McConnell, Seymour, Tacha, Henry, and Kelly had either (1) intentionally and criminally disregarded binding Supreme Court and Tenth Circuit precedent; (2) delayed issuing a decision in one of his earlier appeals for 26 months; (3) failed to exercise de novo review of magistrate judge recommendations and district court judgments; or, (4) motivated by "undue guild favoritism," R., Vol. 1 at 50, ¶ 245 (quotation marks omitted), summarily dismissed three complaints of judicial misconduct he had filed in the Tenth Circuit and one complaint filed by the plaintiff in a case in which Mr. Smith tried to file an amicus brief.

With regard to defendant Krieger, Mr. Smith alleged that prior to her recusal in *Krieger*, she violated his due process rights by not permitting him to file an amended complaint as of right and by not enforcing a deadline against his opponents. He also alleged that in *Bender*, Judge Krieger's failure to recuse herself because of her alleged personal friendship and professional collaboration

---

[4] The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

with one of the defendants was felonious, and that she had fabricated or elided facts in order to exercise jurisdiction.[5]

For substantive relief, Mr. Smith sought an order (1) removing the defendant judges from their offices; (2) convening a grand jury to hear evidence of federal crimes those judges and others allegedly committed; (3) compelling the Attorney General to provide supervisory counsel under 28 U.S.C. § 519; and (4) granting him leave to prosecute any indictments returned by the grand jury in the event the local United States Attorney refused to prosecute. He also asked for reasonable fees, expenses, and costs, including attorney fees.

The defendants filed two motions to dismiss, which the district court granted under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction, concluding that "[r]emoving judges from office . . . is the sole province of Congress. U.S. Const., art. I, § 2,3." R., Vol. 4 at 60. Regarding Mr. Smith's second claim, the district court determined that he lacked authority to proceed as a private attorney general on behalf of the United States because 28 U.S.C. § 519 vests that authority solely in the Attorney General and his delegates.

The district court next proposed filing restrictions based in part on Mr. Smith's series of pro se lawsuits against the judges who had adversely

---

[5]    Although Mr. Smith named the Honorable Wiley Y. Daniel as a defendant, he made no allegations regarding Judge Daniel other than to note that defendant "Judge Doe" would likely succeed Judge Daniel upon the latter's recusal from another case Mr. Smith had filed.

-15-

decided cases against him, all stemming from the Colorado Supreme Court's order denying his application for admission to the Colorado bar. The court also noted Mr. Smith's penchant for making duplicative arguments in the same case, such as an emergency motion for relief in the nature of mandamus and two emergency motions for declaratory relief, all of which raised the same arguments found in his complaint and his responses to defendants' motions to dismiss. The court further observed that his filings had "become increasingly abusive. In at least one prior case in this Court, as well as in the two cases still pending before [the district court], Mr. Smith suggests that violence against federal judges may be justified if a litigant, such as himself, does not get the relief he requests." *Id.* at 65. Based on this history, and over Mr. Smith's objections, the district court prohibited him from filing any new actions pro se in the United States District Court for the District of Colorado unless he first receives permission from that court to do so. The court also treated a post-judgment motion Mr. Smith had filed under Rule 59(e) as a Rule 60(b) motion and denied it.[6]

## B. Discussion

### 1. Appellate Jurisdiction

The district court issued its dismissal order in this case on November 19, 2009, and its separate judgment on November 23, 2009. On January 5, 2010,

---

[6] Mr. Smith has not taken issue with the denial of his Rule 60(b) motion, so we do not consider it any further.

Mr. Smith filed a post-judgment motion, which contained his objections to the court's proposed filing restrictions. On January 13, 2010, the court overruled his objections to the filing restrictions and imposed them. The next day, January 14, 2010, Mr. Smith filed his notice of appeal, which read, in its substantive entirety:

> NOTICE IS HEREBY GIVEN that the United States of America, as represented by Kenneth L. Smith *in propria persona* in a relational capacity in the above-named cases, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the Final Judgment entered herein on November 23, 2009 (motions for post-judgment relief are still pending).

*Id.* at 172. The NOA was timely with regard to the underlying judgment and the order imposing the filing restrictions. However, it does not designate that order as an object of this appeal, as required by Fed. R. App. P. 3(c)(1)(B), and Mr. Smith did not file another NOA or an amended NOA designating that order for appeal. But regardless of whether the NOA was compliant with Rule 3 as to the order imposing filing restrictions, Mr. Smith challenged the filing restrictions in his opening brief. *See* Aplt. Opening Br. at 60-67. That brief was filed on February 26, 2010, within sixty days of the order imposing the filing restrictions and therefore timely under Fed. R. App. P. 4(a)(1)(B). Further, it complied with all three requirements of Rule 3(c)(1). Therefore, we may treat it as the functional equivalent of an NOA from the order imposing filing restrictions, conferring jurisdiction on this court over that order. *See Smith*, 502 U.S. at 244-48.

-17-

## 2. Merits

Having established that we have jurisdiction to review the district court's underlying judgment and its order imposing filing restrictions, we now turn to Mr. Smith's appellate arguments. Our review of a district court's order dismissing an action under Fed. R. Civ. P. 12(b)(1) is de novo, *Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004), and our review of the imposition of filing restrictions is for an abuse of discretion, *Tripati v. Beaman*, 878 F.2d 351, 354 (10th Cir. 1989).

Regarding his first claim, Mr. Smith argues that impeachment is not the sole means of removing Article III judges who no longer exhibit the "good Behaviour" required for continued tenure under Article III of the Constitution. Instead, he argues, the Ninth and Tenth Amendments work to reserve to the people the right to remove such Article III judges. We disagree. Although the Constitution itself does not expressly limit removal of Article III judges to Congressional impeachment, the Supreme Court has taken that view. *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 59 (1982) (explaining that "[t]he 'good Behaviour' Clause guarantees that Art. III judges shall enjoy life tenure, subject only to removal by impeachment") (plurality opinion); *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 16 (1955) (stating that "[Article III] courts are presided over by judges appointed for life, subject only to removal by impeachment"). For those "alleging that a judge has engaged

in conduct prejudicial to the effective and expeditious administration of the business of the courts, or alleging that such judge is unable to discharge all the duties of office by reason of mental or physical disability," 28 U.S.C. § 351(a), Congress has established a statutory mechanism for complaints of judicial misconduct that can culminate in Congressional impeachment proceedings. *See* 28 U.S.C. §§ 351-364.

Mr. Smith's second claim fares no better than his first. Congress has by statute conferred the power to prosecute crimes in the name of the United States on the United States Attorney General and his delegates. *See* 28 U.S.C. §§ 516, 519. The long-standing view of the Supreme Court is that such power is exclusive. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has *exclusive authority* and absolute discretion to decide whether to prosecute a case") (emphasis added); *id.* at 694 ("Under the authority of Art. II, [§] 2, Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government. 28 U.S.C. [§] 516."); *The Confiscation Cases*, 74 U.S. 454, 457 (1868) ("Public prosecutions, until they come before the court to which they are returnable, are within the *exclusive direction* of the district attorney . . . .") (emphasis added). Therefore, as the district court concluded, Mr. Smith has no right to initiate a criminal prosecution in the name of the United States under the Ninth or Tenth Amendments, or otherwise.

-19-

Finally, Mr. Smith contends that the district court's filing restrictions violate his First Amendment right of access to the courts and his due process rights, and he suggests that a finding of frivolousness is essential to the imposition of filing restrictions. We have rejected these arguments. "[T]he right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous *or* malicious." *Tripati*, 878 F.2d at 353 (citation omitted) (emphasis added). Federal courts have "power under 28 U.S.C. § 1651(a) to enjoin litigants who abuse the court system by harassing their opponents." *Id.* at 352. Thus, federal courts may "regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *Id.* (quotation omitted). Although "[l]itigiousness alone will not support an injunction restricting filing activities," filing restrictions "are proper where a litigant's abusive and lengthy history is properly set forth," *id.* at 353, the court provides guidelines as to what the litigant "must do to obtain the court's permission to file an action," and the litigant receives "notice and an opportunity to oppose the court's order before it is instituted," *id.* at 354.

Here, the district court complied with all requirements for imposing filing restrictions. It recounted Mr. Smith's lengthy, abusive filing history, which we have alluded to throughout this decision and discuss below in greater detail. The court also provided Mr. Smith with pertinent guidelines for obtaining the court's

-20-

permission to file an action and with an opportunity to oppose the restrictions. Although the district court did not consider the case before it to be frivolous, it did not need to; abuse of the judicial process suffices. Indeed, having reviewed Mr. Smith's litigation history, we conclude that not only should the district court's filing restrictions be affirmed, but that a monetary sanction and filing restrictions in this court are warranted, and we now turn to those.

## III.    Monetary Sanctions and Filing Restrictions

Mr. Smith has had nine pro se cases decided adversely in courts of this circuit and the state of Colorado, each of which stemmed directly or indirectly from the denial of his bar application. In *Mullarkey I* and *II*, he sued the Colorado Supreme Court justices over that court's denial of his bar application. Unsuccessful, he then turned his sights on the constitutionality of unpublished judicial decisions issued by the Colorado Supreme Court and this court, specifically including our decision in *Mullarkey I*. *See Smith v. U.S. Court of Appeals for the Tenth Circuit*, 484 F.3d 1281, 1284 (10th Cir. 2007) (consolidated disposition of appeals in two cases). Again unsuccessful, he filed *Bender*, suing the Justices of the Colorado Supreme Court along with the attorney general and an assistant attorney general of the State of Colorado. The dismissal of that case was affirmed on the basis of sovereign and qualified immunity, the *Rooker-Feldman* doctrine, and preclusion doctrine. *See Bender*, 350 F. App'x

at 192-94.  As discussed above, Mr. Smith also filed *Krieger* and *Anderson*, largely targeting judges who had issued rulings adverse to him in the prior cases.

The same district judge who presided over *Anderson* has also dismissed two other cases Mr. Smith filed, and he has appealed one of those.  The district court's decisions indicate Mr. Smith again challenged the process that the Colorado Supreme Court used in denying his admission to the Colorado bar and has continued his pattern of suing judges who have ruled against him.  *See Smith v. Arguello*, No. 09-cv-02589-PAB, 2010 WL 1781937, at *1 (D. Colo. May 4, 2010), *appeal docketed*, No. 10-1280 (10th Cir. July 6, 2010); *Smith v. Eid*, No. 10-cv-00078-PAB, 2010 WL 1791549, at *1-*2 (D. Colo. May 4, 2010).[7]

Not only has Mr. Smith persisted down a futile path, the tenor of his court filings has turned increasingly abusive.  We made note of this in *Bender* and warned Mr. Smith of the consequences:

> Mr. Smith's opening and reply briefs are littered with frivolous and irrelevant arguments and tirades.  His briefs also contain scurrilous allegations and personal attacks regarding alleged wrongdoing by the named Justices of the Colorado Supreme Court and the district judge. . . . We admonish and warn Mr. Smith that if he files future appeals in this court containing similar unsupported claims, allegations, or personal attacks, we will not hesitate to impose hefty sanctions and filing restrictions in order to curb his abusive and disrespectful litigation practices.

---

[7]     According to the district court's decision in *Arguello*, Mr. Smith also claimed that opposing counsel in prior suits violated his constitutional rights by seeking sanctions against him, and he challenged "his inclusion on a 'threat list' which prevents him from entering courthouses without 'harassment' by U.S. Marshals."  *Arguello*, No. 09-cv-02589-PAB, 2010 WL 1781937, at *1.

*Bender*, 350 F. App'x at 195.  Mr. Smith did not heed our warning, and we conclude that it is time to impose those "hefty sanctions and filing restrictions" we warned him about in *Bender*.

"This court has the . . . inherent power to impose sanctions that are necessary to regulate the docket, promote judicial efficiency, and . . . to deter frivolous filings."  *Christensen v. Ward*, 916 F.2d 1462, 1469 (10th Cir. 1990).  Thus, we have ordered pro se appellants to make a monetary payment directly to this court "as a limited contribution to the United States for the cost and expenses of this action."  *Id.* (imposing $500 sanction); *see also Van Sickle*, 791 F.2d at 1437 (imposing $1,500 sanction).  Mr. Smith's appeal in *Krieger* is frivolous, and his appeal in *Anderson* borders on the frivolous.  In both cases, and despite our warning in *Bender*, he has persisted in making unsupported allegations of judicial corruption, baseless claims, and personal attacks on the judges of the district court, this court, and several Justices of the United States Supreme Court and the Colorado Supreme Court.  His briefs contain vulgar language, threats of lethal violence against judges rendering decisions he considers tyrannical, and tirades on a number of irrelevant topics.  Accordingly, we order Mr. Smith to show cause within ten days of the entry of this Order and Judgment why he should not be ordered to pay $3,000 to the Clerk of the United States Court of Appeals for the Tenth Circuit as a limited contribution to the United States for the costs and expenses of these appeals.  *See Sain v. Snyder*, Nos. 09-2153, 09-2175,

-23-

2010 WL 1006589 (10th Cir. Mar. 19, 2010) (sanctioning pro se appellant $3,000 under reasoning of *Christensen* and *Van Sickle*), *petition for cert. filed*, 78 U.S.L.W. 3653 (U.S. Apr. 14, 2010) (No. 09-1332).  The response shall not exceed five pages.  If the response is not received by the Clerk within the specified ten days, the sanction will be imposed.

Finally, as noted above, federal courts have the inherent power to impose carefully tailored filing restrictions.  *Tripati*, 878 F.2d at 352.  Based on Mr. Smith's "pattern of litigation activity[,] which is manifestly abusive," *Winslow v. Hunter (In Re Winslow)*, 17 F.3d 314, 315 (10th Cir. 1994), we now impose filing restrictions.  Given the contemptuousness and utter lack of propriety evidenced in his appellate filings, we do not limit the restrictions to any specific subject matter.  Thus, in order to proceed pro se in this court in any appeal or original proceeding, Mr. Smith must provide this court with:

1.  A list of all appeals or original proceedings filed, whether currently pending or previously filed with this court, including the name, number, and citation, if applicable, of each case, and the current status or disposition of each appeal or original proceeding; and

2.  A notarized affidavit, in proper legal form, that recites the issues he seeks to present, including a short discussion of the legal basis asserted therefor, and describing with particularity the order being challenged.  The affidavit must also certify, to the best of Mr. Smith's knowledge, that the legal arguments being

raised are not frivolous or made in bad faith; that they are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the appeal or original proceeding is not interposed for any improper purpose, such as delay or to needlessly increase the cost of litigation; and that he will comply with all appellate and local rules of this court.

These filings shall be submitted to the Clerk of the court, who shall forward them for review to the Chief Judge or her designee, to determine whether to permit Mr. Smith to proceed with a pro se appeal or original proceeding. Without such authorization, the matter will be dismissed. If the Chief Judge or her designee authorizes a pro se appeal or original proceeding to proceed, an order shall be entered indicating that the matter shall proceed in accordance with the Federal Rules of Appellate Procedure and the Tenth Circuit Rules.

In addition, Mr. Smith shall not submit any further pleadings or motions in this court not specifically authorized by the Federal Rules of Appellate Procedure. In the event that such a motion or pleading is submitted, the Clerk of the court may return it to Mr. Smith unfiled.

Mr. Smith shall have ten days from the date of this order and judgment to file written objections, limited to fifteen pages, to these proposed filing restrictions. If he does not file timely objections, the filing restrictions will take effect twenty days from the entry of this order and judgment. If he does file timely objections, these filing restrictions will not take effect unless the court

-25-

overrules his objections, in which case these filing restrictions shall apply to any filing with this court after that ruling. Although Mr. Smith must comply with the Federal Rules of Appellate Procedure and the Tenth Circuit Rules in *Smith v. Arguello*, No. 10-1280, the filing restrictions shall have no other application to that matter.

## Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Mr. Smith's Post-Judgment Motion in No. 09-1503. In No. 10-1012, we AFFIRM the district court's judgment and its order imposing filing restrictions. Further, we ORDER Mr. Smith to show cause why he should not be sanctioned and why filing restrictions should not be imposed, as set forth herein.

Entered for the Court

Jerome A. Holmes
Circuit Judge